**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JEFFREY NEMES, | : | |
| | : | |
| Plaintiff, | : | Civil No. 08-2814 (RMB) |
| | : | |
| v. | : | |
| | : | **O P I N I O N** |
| LEWIS KORNGUT, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Jeffrey Nemes, Pro Se
SBI # 554219C
Mid-State Correctional Facility
P.O. Box 866-1 Range Road
Wrightstown, NJ 08562

Tracey C. Hinson, Esq.
Attorney for Defendants Korngut, Neafsy, Brown,
     Stemmer, McKoy, and Salvatore
Office of the NJ Attorney General
25 Market Street, P.O. Box 112
Trenton, NJ 08852

Kimberley M. Wilson, Esq.
Attorney for Defendants Trenton Police and Scott Connor
City of Trenton
319 East State Street, Room 300
Trenton, NJ 08608

Eric L. Harrison, Esq.
Attorney for Defendants Chief David Sabo and
     Chief William Kiernan
Methfessel & Werbel, PC
3 Ethel Road, Suite 300
Edison, NJ 08818-3012

Keith J. Miller, Esq.
Attorney for Defendants Stein, Coryell, and Times of New Jersey
Robinson, Wettre & Miller, LLC
One Newark Center
19th Floor
Newark, NJ 07102

Gerald A. Hughes, Esq.
Thomas P. Stevens, Esq.
Attorneys for Defendant The Trentonian, Inc.
Fenningham Stevens & Dempster LLP
Five Neshaminy Interplex, Suite 315
Trevose, PA 19053

**BUMB, District Judge**

Plaintiff, Jeffrey Nemes, a prisoner confined at the Mid-State Correctional Facility, Wrightstown, New Jersey, brings this civil rights action, pursuant to 42 U.S.C. § 1983. At this time, the Court must review the complaint pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the following reasons, plaintiff's complaint will be dismissed, without prejudice, as to most defendants.[1]

---

[1] On June 13, 2008, this case was administratively terminated because Plaintiff did not pay the $350.00 filing fee or properly apply to proceed in forma pauperis. On June 24, 2008, Plaintiff paid the filing fee, and on July 24, 2008, this Court ordered the case reopened.

**BACKGROUND**

Plaintiff states that in the late part of 1999, while he was employed as a police sergeant in Hamilton, New Jersey and owned a business called "Nemes Enterprises, Inc.," defendants Korngut (a deputy attorney general in the New Jersey Office of the Insurance Fraud Prosecutor), Stemmer, and Salvatore (investigators at the Office of the Insurance Fraud Prosecutor) began an investigation of Plaintiff, which was supervised by defendants Brown and Neafsy (both deputy attorney generals). (Complaint, ¶¶ 4, 14). As a result of that investigation, Plaintiff claims that his constitutional rights were violated.

First, Plaintiff claims on that on February 1 and 2 of 2000, defendants Korngut and Neafsy "intentionally released information to the media." Claiming that this release of information was done in concert with defendants Coryell, the Trenton Times and Trentonian, Plaintiff states that he was "publicly accused" of being involved in an "arson ring," "fraud," "shady dealings," and "bribery." Plaintiff states that these charges were defamatory and caused irreparable harm to his personal reputation, his property interest in his public employment, and his business. (Complt., ¶ 15). As a result of the information made public, Plaintiff states that he "was forced to explain to employees and customers the information published in the media." He contends that defendants Korngut, Neafsy, and Brown "had a duty to prevent

3

information, not related to an arrest, from being released in their capacity as public officials." (Complt., ¶ 16).

Second, Plaintiff alleges that from February 2000 to the "present," defendants Korngut, Stemmer, Salvatore, and Connor "conspired with each other and others to maliciously prosecute the plaintiff in a concerted effort to deprive the plaintiff [of] his Fourth Amendment right to liberty and his Fifth and Fourteenth Amendment right to due process and Sixth Amendment right to a fair trial." (Complt., ¶ 17). Particularly, Plaintiff states that on March 28, 2000, defendants Stemmer and Salvatore contacted a customer of Plaintiff's business and advised him "to demand money from plaintiff in an effort to prosecute plaintiff for a crime." (Complt., ¶ 18). Similarly, on April 21, 2000, defendants Stemmer and Salvatore contacted another of Plaintiff's customers and told her to "stop plaintiff from completing the construction project at her home," and "advised [her] to demand money from plaintiff in an effort to prosecute plaintiff for a crime." (Complt., ¶ 19). Plaintiff claims these actions violated his due process rights.

Plaintiff states that as a result of defendant Stemmer's actions with his customers, Stemmer signed a criminal complaint against him charging him with a violation of New Jersey Statute Annotated 2C:20-9, Failure to Make Required Disposition of Entrusted Property. Plaintiff alleges that the criminal

4

complaint lacked probable cause and was a result of the
defendants Stemmer, Salvatore, Connor, and Korngut forcing the
customers to allege a crime. (Complt., ¶ 20). Plaintiff also
contends that on May 20, 2000, defendants Gankiewicz and Draggert
(Hamilton Township Police Department employees) "provided the
Trentonian with confidential internal police reports accusing
plaintiff of the use of cocaine," causing the Trentonian to
further damage his reputation and violate his Sixth and
Fourteenth Amendment rights. (Complt., ¶ 20).

Plaintiff continues, alleging that from February 2, 2000 to
December 18, 2000, defendants Stemmer, Salvatore, Connor, and
Korngut "aggressively" investigated him concerning bribery
attempts. According to Plaintiff, these defendants attempted to
coerce defendants Chief Sabo and Chief Kiernan (Hamilton Township
Fire Department employees) to implicate Plaintiff in a bribery
attempt, which eventually the defendant Chiefs did. (Complt., ¶¶
22-26).

Plaintiff was eventually tried on January 15, 2003.
(Complt., ¶ 29). On February 20, 2003 he was convicted of a
single count for violating N.J.S.A. 2C:20-9, and eventually was
sentenced to seven years in prison. (Complt., ¶ 30).

Plaintiff states that he appealed his conviction, and was
released pending his appeal. As a result of his release and
"since it was apparent that the criminal conviction was in all

5

probability going to be reversed," defendants Korngut, Stemmer, and Salvatore began to "systemically retaliate against [him]." (Complt., ¶¶ 31, 31).[2]

Plaintiff's retaliation claims reveal that defendants moved to revoke his bail (Complt., ¶ 33), demanded that he withdraw his appeal (Complt., ¶¶ 32, 34), and convened a new second grand jury, and eventually a third grand jury, and obtained two new indictments on other charges (Complt., ¶ 35, 39). Plaintiff also claims that defendants retaliated against him by filing a civil complaint for insurance fraud. (Complt., ¶ 41).

Again, Plaintiff claims that defendants Webster, The Trentonian, and The Trenton Times published various articles which were false and misleading in order to defame him and deny his right to an impartial trial. (Complt., ¶¶ 36-37).

Plaintiff's original conviction was reversed by the New Jersey appellate court due to a defect in the jury charge. (Complt., ¶ 42). A trial on the second indictment began in August of 2005, but was declared a mistrial. (Complt., ¶ 43). On February 22, 2008, a trial based on the bribery allegations by defendants Chief Sabo and Chief Kiernan resulted in a conviction. (Complt., ¶ 45).

Plaintiff refused to plead guilty to the original conviction, which had been reversed on appeal. As a result, he

---

[2] There are two paragraph 31s in Plaintiff's complaint.

states that defendants retaliated against him by requesting the
court sentence him to an excessive sentence of eleven years in
prison. (Complt., ¶ 46).  Plaintiff was sentenced to eight years
in prison as a result of the bribery convictions, which is
currently on appeal.  (Complt., ¶ 49).

Further, Plaintiff states that after his conviction, his
family hired a private investigator to investigate the claims of
the wife of a state witness, who stated that defendants Korngut,
Stemmer, and Salvatore engaged in improper witness tampering and
intimidation.  The investigation revealed that certain of these
defendants encouraged the state witness to lie and intentionally
withheld exculpatory evidence.  (Complt., ¶ 47).

Finally, Plaintiff alleges that a fourth grand jury has been
empaneled to obtain a superseding indictment against Plaintiff
concerning the same "set of facts that ended in the reversed
conviction that Korngut, Stemmer, and Salvatore presented to a
grand jury eight years earlier."  (Complt., ¶ 52).

Plaintiff lists the following Causes of Action against the
various defendants:

1.   Conspiracy by defendants Korngut, Stemmer, Salvatore,
     and Connor to maliciously prosecute Plaintiff, withhold
     exculpatory evidence, intimidate witnesses, and
     "intentional infliction of emotional and financial
     distress."  (Complt., ¶ 58).

2.  Defamation of character by various state actor
    defendants and the newspaper defendants (Stein,
    Coryell, Webster, Trenton Times and Trentonian).
    (Complt., ¶ 59).

3.  Failure to properly investigate and follow procedure by
    various state actor defendants.  (Complt., ¶ 60).

4.  Retaliation by certain defendants for Plaintiff's
    exercising his constitutional rights.  (Complt., ¶ 61).

5.  Denial of right to fair and impartial jury because of
    newspaper defendants' publishing of incorrect,
    inaccurate, and defamatory information.  (Complt., ¶
    62).

6.  Malicious prosecution by defendants Korngut, Stemmer,
    and Salvatore, which terminated in favor of Plaintiff,
    but "resulted in a seven year, post arraignment
    restraint to his Fourth Amendment right to liberty."
    (Complt., ¶ 63).

Plaintiff asks for this Court to issue injunctions to
protect Plaintiff from further retaliatory actions, enter a
judgement to protect evidence, enter an injunction to order
witness Boone to "protect and produce audio tape evidence" of the
misconduct of defendants which Plaintiff states is in his
possession, and monetary damages.  (Complt., "Prayer for
Relief").

## DISCUSSION

### A.   Standard for Sua Sponte Dismissal

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A, that a court must dismiss, at the earliest practicable time, actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled

9

allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  <u>See</u> <u>id.</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>, ---U.S. ----, ----, 127 S. Ct. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008).  The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

<u>Phillips</u>, 515 F.3d at 234 (internal citations omitted).

**B.**   **Section 1983 Actions**

_____A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  See West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

**C.**   **Defendants Stein, Coryell, The Times of New Jersey, Webster,
and The Trentonian Are Not State Actors.**

Plaintiff accuses defendants Stein and Coryell, reporters

for The Times of New Jersey (Complt., ¶ 11), defendant Webster, a

reporter for The Trentonian newspaper (Complt., ¶ 12), and

defendants The Times of New Jersey and The Trentonian[3] ("the

_____

[3]  Plaintiff improperly named "The Trentonian" as a
defendant.  Defendant's attorney has made an appearance on behalf
of defendant "Capital City Publishing LLC."

11

newspaper defendants") of defamation of character (Count II,
Complt., ¶ 59) and of publishing incorrect, inaccurate, and
defamatory information (Count V, Complt., ¶ 62), in violation of
his constitutional rights.  However, these counts/claims must be
dismissed, as the newspaper defendants are not state actors
acting under color of state law for purposes of § 1983 liability.

    "Although a private [party] may cause a deprivation of . . .
a right, [it] may be subjected to liability under § 1983 only
when [it] does so under color of law." Mark v. Borough of
Hatboro, 51 F.3d 1137, 1141 (3d Cir.), cert. denied, 516 U.S. 858
(1995) (quoting Flagg Bros., Inc. v. Brooks , 436 U.S. 149, 156
(1978)).  The "under color of state law" requirement of 42 U.S.C.
§ 1983 has been treated identically to the "state action"
requirement of the Fourteenth Amendment.  See Mark, 51 F.3d at
1141 (citing United States v. Price, 383 U.S. 787, 794 n.7
(1966); Lugar v. Edmondson Oil Co., 457 U.S. 922, 928 (1982);
Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)).

    A private entity can be sued under § 1983 where (1) it "has
exercised powers that are traditionally the exclusive prerogative
of the State, Mark, 51 F.3d at 1142; (2) the State and the
private party act in concert or jointly to deprive a plaintiff of
his rights, Adickes v. S.H. Kress & Co. , 398 U.S. 144, 170-171
(1970); (3) the State has permitted a private party to substitute
his judgment for that of the State, Cruz v. Donnelly, 727 F.2d

12

79, 81-82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, <u>Edmonson v. Leesville Concrete Co., Inc.</u>, 500 U.S. 614, 620 (1991); <u>Mark</u>, 51 F.3d at 1143.

In this case, Plaintiff makes a bald accusation that these newspaper defendants were "acting in concert with the government in a law enforcement capacity." (Complt., ¶¶ 11, 12). However, Plaintiff conceded that the newspaper defendants were reporting what was told to them. <u>See</u> Complt., ¶ 15 (stating ". . . defendants Korngut and Neafsy intentionally released information to the media."). Plaintiff simply states that the information was released "in concert" with the newspaper defendants; however, Plaintiff does not allege facts indicating that these newspaper defendants acted to deprive him of his rights. <u>See</u>, <u>e.g.</u>, <u>Lewis v. City of Trenton Police Dep't</u>, 175 Fed. Appx. 553 (3d Cir. 2006)(unpubl.)(finding that newspaper defendants were not state actors). Plaintiff does not allege any facts indicating that any of these defendants are state actors or otherwise acted under color of state law. <u>See</u> <u>DeShaney v. Winnebago County Dept. of Social Services</u>, 489 U.S. 189 (1989) (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure that the State protected them from each other"); <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 835 (9th Cir. 1996) ("Individuals . . . have no right to be free from infliction of

13

[constitutional] harm by private actors"); <u>Jones v. Arbor, Inc.</u>, 820 F. Supp. 205, 208 (E.D. Pa. 1993) (plaintiff did not allege that defendant corporation was a state actor or had such a symbiotic relationship with the state so as effectively to be an instrumentality of the state). Therefore, any civil rights claims against these defendants will be dismissed.

Additionally, Plaintiff's claims against these newspaper defendants, even if these defendants were considered state actors which this Court does not find, are untimely.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." <u>Bethel v. Jendoco Construction Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss <u>sua</u> <u>sponte</u> under 28 U.S.C. § 1915(e)(2) a <u>pro</u> <u>se</u> civil rights claim whose untimeliness is apparent from the face of the complaint. <u>See</u>, <u>e.g.</u>, <u>Pino v. Ryan</u>, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) <u>in</u> <u>forma</u> <u>pauperis</u> provisions, that <u>sua</u> <u>sponte</u> dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); <u>Hall v. Geary County Bd. of County Comm'rs</u>, 2001 WL 694082 (10th Cir. June 12, 2001)

14

(unpub.) (applying <u>Pino</u> to current § 1915(e)); <u>Rounds v. Baker</u>, 141 F.3d 1170 (8th Cir. 1998)(unpubl.); <u>Johnstone v. United States</u>, 980 F. Supp. 148 (E.D. Pa. 1997) (applying <u>Pino</u> to current § 1915(e)).  The requirement of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity), that federal courts review and dismiss any complaint that fails to state a claim, parallels the provision in 28 U.S.C. § 1915(e).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions.  <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, --, 127 S. Ct. 1091, 1094 (2007).  Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims.  <u>See</u> <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); <u>Cito v. Bridgewater Township Police Dept.</u>, 892 F.2d 23, 25 (3d Cir. 1989).  Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application.  <u>See</u> <u>Wilson</u>, 471 U.S. at 269.[4]

---

[4]  New Jersey statutes set forth certain bases for "statutory tolling."  <u>See</u>, <u>e.g.</u>, <u>N.J.S.A.</u> § 2A:14-21 (detailing tolling because of minority or insanity); <u>N.J.S.A.</u> § 2A 14-22

Here, according to the allegations of his complaint, Plaintiff's claims against the newspaper defendants accrued[5] in 2000, when the articles were published.  His complaint was not filed until 2008.

Thus, even if the newspaper defendants were considered state actors, the claims against them as asserted by Plaintiff would

---

(detailing tolling because of nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. See Freeman v. State, 347 N.J. Super. 11, 31 (App. Div.) (citations omitted), certif. denied, 172 N.J. 178 (2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Id.  When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).

   [5] A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of this action." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994).  "Plaintiff's actual knowledge is irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

clearly be time-barred.  These defendants will be dismissed from this action.[6]

**D.    Plaintiff's Malicious Prosecution Claims and Claims of Improper Investigation and Procedure Will Be Dismissed, Without Prejudice.**

In Counts I, III, V and VI of his complaint (Complt., ¶¶ 58, 60, 62, 63) Plaintiff asserts that defendants Korngut, Stemmer, and Salvatore initiated a malicious prosecution against him, which terminated in his favor, and resulted in a seven-year "post arraignment restraint" on his Fourth Amendment right to liberty. (Complt., ¶ 63).  He also claims that these defendants, along with defendants Sabo, Kiernan, O'Neil, Mastropolo, and Connor, failed to properly investigate his claims, failed to follow proper police procedure, manufactured false testimony and fabricated evidence to prosecute him, and along with the newspaper defendants deprived him of a fair and impartial jury.

1.    Malicious Prosecution

In order to state a prima facie case for a § 1983 claim of malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996), and that there has been a seizure, Gallo v. City

---

[6]  For the reasons stated herein, defendants Stein, Coryell, and The Times of New Jersey's motion to dismiss (docket entry 11), will be granted- as will defendant Capital City's ("The Trentonian") motion to dismiss (docket entry 15).

of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998); Luthe v. Cape
May, 49 F. Supp.2d 380, 393 (D.N.J. 1999).  Under New Jersey law,
the common law tort elements of a malicious prosecution action
arising out of a criminal prosecution are:  (1) the criminal
action was instituted by the defendant against the plaintiff,
(2) it was actuated by malice, (3) there was an absence of
probable cause for the proceeding, and (4) the criminal
proceeding was terminated favorably to the plaintiff.  See Lind
v. Schmid, 67 N.J. 255, 262 (1975).  A plaintiff attempting to
state a malicious prosecution claim must also allege that there
was "'some deprivation of liberty consistent with the concept of
seizure.'"  Gallo, 161 F.3d at 222 (quoting Singer v. Fulton
County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see Albright v.
Oliver , 510 U.S. 266 (1994).  Ordinarily, the statute of
limitations on a malicious prosecution claim begins to run on the
date plaintiff receives a favorable termination of the prior
criminal proceeding.  See Heck v. Humphrey, 512 U.S. 477, 489
(1994).

    Here, according to the facts alleged by Plaintiff in the
complaint, the conviction resulting from the first indictment was
reversed on appeal due to "various constitutional issues in the
charge." (Complt., ¶ 42).  However, a "favorable termination,"
does not occur until "termination of the criminal proceedings in
favor of the accused, such that it is no longer possible for an

18

appeal or for a retrial of the criminal proceedings." <u>Michaels</u>
<u>v. New Jersey</u>, 955 F. Supp. 315, 329 (D.N.J. 1996)(relying on New
Jersey substantive law and the Restatement (Second) of Torts, for
finding that favorable termination occurs by formal abandonment
of the proceedings by the prosecutor or a final order in favor of
the accused, which precludes further proceedings against the
accused); <u>see</u> <u>also</u> <u>Smith v. Holtz</u>, 879 F. Supp. 435, 443-44 (M.D.
Pa. 1995)(refusing to find a "favorable termination" in a case
where the criminal defendant was denied a fair trial because of
egregious prosecutorial misconduct, and a second trial would
violate his double jeopardy rights).  Here, Plaintiff's complaint
alleges facts indicating that his conviction was reversed due to
an unconstitutional jury charge.  There is no indication that
Plaintiff will not be re-tried, or that further proceedings
against him regarding the first conviction are precluded.
Accordingly, any malicious prosecution claim has not yet accrued
and will be dismissed without prejudice.

    2.   <u>Other Challenges to Underlying Criminal Prooceedings</u>

    In addition, Plaintiff asserts that defendants Korngut,
Stemmer, and Salvatore, along with defendants Sabo, Kiernan,
O'Neil, Mastropolo, and Connor, failed to properly investigate
his claims, failed to follow proper police procedure, and
manufactured false testimony and fabricated evidence to prosecute
him.  He also claims he was deprived of a fair jury due to

19

certain defendants statements to the media.  Because success on
any of these claims would necessarily invalidate Plaintiff's
conviction, they are premature until such time as Plaintiff's
conviction has otherwise been invalidated, and they must be
dismissed without prejudice at this time.

In Preiser v. Rodriquez, 411 U.S. 475 (1973), the Supreme
Court analyzed the intersection of 42 U.S.C. § 1983 and the
federal habeas corpus statute, 28 U.S.C. § 2254.  In Preiser,
state prisoners who had been deprived of good-conduct-time
credits by the New York State Department of Correctional Services
as a result of disciplinary proceedings brought a § 1983 action
seeking injunctive relief to compel restoration of the credits,
which would have resulted in their immediate release.  See 411
U.S. at 476.  The prisoners did not seek compensatory damages for
the loss of their credits.  411 U.S. at 494.  The Court held that
"when a state prisoner is challenging the very fact or duration
of his physical imprisonment, and the relief he seeks is a
determination that he is entitled to immediate release or a
speedier release from that imprisonment, his sole federal remedy
is a writ of habeas corpus."  Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court
addressed a corollary question to that presented in Preiser,
whether a prisoner could challenge the constitutionality of his
conviction in a suit for damages only under § 1983, a form of

20

relief not available through a habeas corpus proceeding.  Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that "a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90.

"Considering Heck and summarizing the interplay between habeas and § 1983 claims, the Supreme Court recently explained that, 'a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of the confinement or its duration.'" Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006) (quoting Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005)) (emphasis in original).

The claims asserted by Plaintiff regarding the investigation and evidence presented at his trial are the type of claims that would necessarily demonstrate the invalidity of his conviction. Accordingly, these claims have not yet accrued and must be dismissed, without prejudice. See Wallace v. Kato, 127 S. Ct. 1091 (2007); Adams v. City of Oakland, 1995 WL 150562 (N.D. Cal. 1995).

**E.** **Prosecutors and Investigators Are Immune from Suit.**

Additionally, defendants Korngut, Neafsy, and Brown, sued by Plaintiff in this action, are Deputy Attorney Generals in the New Jersey Office of Insurance Fraud. (Complt., ¶ 5). Prosecutors, such as these defendants, are immune from damages for actions

22

taken in their official prosecutorial capacity.  The seminal case
on prosecutorial immunity is Imbler v. Pachtman, 424 U.S. 409
(1976).  In Imbler, the Supreme Court held that "in initiating a
prosecution and in presenting the State's case, the prosecutor is
immune from a civil suit for damages under section 1983."  See
424 U.S. at 431.  Specifically, a prosecutor is absolutely immune
when making a decision to prosecute, "even where he acts without
a good faith belief that a wrongdoing has occurred." Kulwicki v.
Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992); see also Rose v.
Bartle, 871 F.2d 331, 343 (3d Cir. 1989).

     In this regard, a falsely-charged defendant may be "remedied
by safeguards built into the judicial system," such as dismissal
of the charges.  See Kulwicki, 969 F.2d at 1464.  In this case,
the allegations against the defendant prosecutors concern acts
that were clearly undertaken in their prosecutorial capacities.

     Likewise, defendants Stemmer and Salvatore, as investigators
for the Office of Insurance Fraud, are immune from suit.  See
Fuchs v. Mercer County, 260 Fed. Appx. 472, 475, 2008 WL 110105
at *3 (3d Cir. 2008)(unpubl.)(quoting Davis v. Grusemeyer, 996
F.2d 617, 632 (3d Cir. 1993), abrogated on other grounds by Rolo
v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir.
1998) ("investigators for a prosecutor performing investigative
work in connection with a criminal prosecution deserve the same
absolute immunity as the prosecutor") and quoting KRL v. Moore,

23

384 F.3d 1105, 1113 (9th Cir. 2004) ("[A]n investigator gathering evidence, a month after an indictment was filed, to prepare the prosecutor for trial is engaged in an advocacy function intimately associated with the judicial process, and is entitled to the same immunity that would be afforded a prosecutor")).

Thus, these defendants are immune from suit and Plaintiff's claims against these defendants may also be dismissed for seeking monetary relief from an immune defendant, pursuant to 28 U.S.C. § 1915A(b)(2).

## F.   Plaintiff's Defamation Claims

Plaintiff alleges in Count II of his complaint that state defendants and the newspaper defendants "published defamatory information with deliberate indifference to the plaintiff," him in violation of his Fourth and Fourteenth Amendment rights.  He contends that the defamatory statements have violated his property interest in his business and in his employment with the police department.  (Complt., ¶ 59).

It has already been established in this Opinion, infra, Section C, that the newspaper defendants are not proper defendants in this action.  As to the state actors sued by Plaintiff, in Board of Regents v. Roth, 408 U.S. 564, 572-73 (1972), the Supreme Court held that the right to one's reputation is protected by the "liberty" component of the Due Process Clause.  However, mere damage to reputation does not state a

24

cognizable constitutional claim; instead, to state a claim, such damage to reputation must occur in the course of, or be accompanied by, alteration or extinguishment of a more tangible interest previously recognized by state or federal law.  See Siegert v. Gilley, 500 U.S. 226 (1991); Paul v. Davis, 424 U.S. 693 (1976).  The independent actions of a third party based upon the defamatory information do not alter this result.  See Siegert, 500 U.S. at 233-34; Aversa v. United States, 99 F.3d 1200, 1216 (1st Cir. 1996).

The Court of Appeals for the Third Circuit has held that "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest."  Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006)(citing Paul, 424 U.S. at 701)(other citations omitted).  The Court of Appeals refers to this as the "stigma-plus" test.  See id. (citations omitted).

The Court of Appeals for the Third Circuit recently examined a plaintiff's claim that he had a constitutionally-protected interest in his reputation.  In Baraka v. McGreevey, 481 F.3d 187 (3d Cir. 2007), the Court of Appeals noted:

> Reputational harm can constitute a protected interest
> when coupled with an additional deprivation of a
> protected right or interest.  See Paul v. Davis, 424
> U.S. 693, 711-12 (1976) (holding reputation alone is
> not a constitutionally protected property or liberty
> interest); see also Graham v. City of Philadelphia, 402

F.3d 139, 142 (3d Cir. 2005); <u>Kelly v. Borough of
Sayreville, N.J.</u>, 107 F.3d 1073, 1077-78 (3d Cir.
1997).  In <u>Paul</u>, the Supreme Court noted that its case
law did "not establish the proposition that reputation
alone, apart from some more tangible interests such as
employment, is either 'liberty' or 'property' by itself
sufficient to invoke the procedural protection of the
Due Process Clause."  <u>Paul</u>, 424 U.S. at 701.  We have
noted some confusion whether the additional "more
tangible interest" must be "a protectible property
interest," or whether "something less than a property
interest, independently protected by the Due Process
Clause, could be [ ] sufficient."  We need not decide
the issue here.

<u>Baraka</u>, 481 F.3d at 208-209 (internal footnote and citations

omitted).  However, although the Court of Appeals declined to

decide the issue of what a "more tangible interest" may be, it

has been held that loss of private income would not be enough.

<u>See</u> <u>Hudak v. Foulk</u>, 2007 WL 4287760 at *13 (W.D. Pa. Dec. 5,

2007)(citing <u>Baraka</u>, 481 F.3d at 208; <u>Clark v. Township of Falls</u>,

890 F.2d 611, 619-20 (3d Cir. 1989) (financial harm resulting

from government defamation alone is insufficient to transform a

reputation interest into a liberty interest); and <u>Sturm v. Clark</u>,

835 F.2d 1009, 1013 (3d Cir. 1987)(monetary harm resulting from

the loss of clients did not constitute deprivation of a liberty

interest)).

    In this case, with regard to his business, Plaintiff fails

to allege facts indicating that he was deprived of a "more

tangible interest."  He states only that he was: "forced to

explain to employees and customers the information published in

the media."  (Complt., ¶ 16).

However, Plaintiff also alleges that his "property interest in public employment as a police officer was damaged.  Since no criminal charges were filed against the plaintiff at the time, the stigma of these public and defamatory comments created irreversible damage to plaintiff's reputation resulting in substantial legal issues."  (Complt., ¶ 15).

As discussed in <u>Hill</u>, "[i]n the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest."  <u>Hill</u>, 455 F.3d at 236 (citing <u>Codd v. Velger</u>, 429 U.S. 624, 628 (1977)).  The Court continued: "The creation and dessemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'  <u>Id.</u>  In order to show the "stigma," it "must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false."  <u>Id.</u> (citations omitted).  When such a deprivation occurs, the employee is entitled to a name-clearing hearing."  <u>Id.</u>  The Court refused to decide whether or not other remedies are available to a plaintiff who prevails on a "stigma-plus" showing.  <u>See</u> <u>id.</u> at n.15.

In this case, Plaintiff has alleged facts indicating that statements made by his employer were made publicly, as they were

27

provided to the newspapers.  However, he has not alleged that the statements were false, as Plaintiff was eventually indicted of the crimes alleged, and convicted for some of them.

Based on the foregoing, this Court will dismiss Plaintiff's federal defamation claims, without prejudice.

## G.  **Plaintiff's Retaliation Claims**

Plaintiff claims in Count IV of his complaint that defendants Korngut, Stemmer and Salvatore, "each time plaintiff exercised a constitutional right, has violated plaintiff's Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights under the United States Constitution.  The acts of intimidation, vexation and retaliation began in the year 1999 and continue to this day."  (Complt., ¶ 61).  These acts included moving to revoke his bail (Complt., ¶ 33), demanding that he withdraw his appeal (Complt., ¶¶ 32, 34), and convening a new second grand jury, and eventually a third grand jury, and obtaining two new indictments on other charges (Complt., ¶ 35, 39).  Plaintiff also claims that defendants retaliated against him by filing a civil complaint for insurance fraud.  (Complt., ¶ 41).

The Court of Appeals for the Third Circuit recently confirmed that "[r]etaliation for the exercise of constitutionally protected rights is itself a constitutional violation."  See Mendoza v. Meisel, 270 Fed. Appx. 105, 108, 2008 WL 726860 at *2 (3d Cir. 2008)(slip copy), (citing White v.

28

<u>Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990) and <u>Allah v.</u>
<u>Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000) (stating that
"government actions, which standing alone do not violate the
Constitution, may nonetheless be constitutional torts if
motivated in substantial part by a desire to punish an individual
for exercise of a constitutional right")).

However, the acts complained of by Plaintiff appear to be
acts taken in the normal course of law enforcement against
Plaintiff, with nothing alleged to suggest that these acts were
committed against Plaintiff in retaliation for Plaintiff's
exercising of his constitutional rights.  This Court is unclear
as to what Plaintiff is attempting to assert in Count IV of his
complaint, and will dismiss this count without prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against the
newspaper defendants will be dismissed, with prejudice, as these
defendants are not state actors, and even if they were, the
claims against them would be time barred.

Further, the remaining claims in Plaintiff's complaint, will
be dismissed, without prejudice.  Plaintiff's claims concerning
malicious prosecution fail to state a claim as Plaintiff has not
alleged facts indicating a favorable termination in his favor.
Plaintiff's claims concerning the investigation, procedures not
followed, the fairness and impartiality of his jury, and the

validity of his trial, are premature in this 1983 action.
Plaintiff must raise these claims through a habeas petition after
exhaustion of state court remedies; any 1983 case regarding these
claims has not yet accrued as Plaintiff's conviction has not been
overturned on appeal or through the habeas procedure.
Plaintiff's claims regarding retaliation are unclear to this
Court, and do not, as submitted, constitute a constitutional
violation to warrant relief under § 1983.

    Since it is conceivable that Plaintiff may be able to amend
his complaint to include facts which indicate that his
constitutional rights were violated, he will be permitted to do
so.  Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment.[7]  See Alston v. Parker, 363 F.3d 229
(3d Cir. 2004); Denton v. Hernandez, 504 U.S. 25, 34 (1992);
Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir.
2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Urrutia v.
Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

---

        [7]  Plaintiff should note that when an amended complaint is
filed, the original complaint no longer performs any function in
the case and "cannot be utilized to cure defects in the amended
[complaint], unless the relevant portion is specifically
incorporated in the new [complaint]."  6 Wright, Miller & Kane,
Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes
omitted).  An amended complaint may adopt some or all of the
allegations in the original complaint, but the identification of
the particular allegations to be adopted must be clear and
explicit.  See id.  To avoid confusion, the safer course is to
file an amended complaint that is complete in itself.  See id.

With regard to motions pending in this case, the motion to dismiss filed by defendants Stein, Coryell, and The Times of New Jersey (docket entry 11), is granted.  These defendants will be dismissed from this action, with prejudice.  The motion to dismiss filed by defendant The Trentonian (docket entry 15), is granted.  This defendant will also be dismissed from this action, with prejudice.

The motion to dismiss filed by defendants Korngut, Neafsy, Brown, Stemmer, McKoy, and Salvatore (docket entry 20) is granted.  However, dismissal of these defendants is without prejudice.

The motion to amend the complaint, filed on October 21, 2008 (docket entry 22), is denied, without prejudice.  However, that motion was submitted without the benefit of this Opinion, and addresses only the motion to dismiss (docket entry 11) filed by the newspaper defendants.  Plaintiff is given the opportunity to file an amended complaint, in accordance with this Opinion and the accompanying Order.

The motion for default judgment as to defendants Connor, Trenton Police, O'Neil, Mastropolo, Draggert, Gankiewicz and Hamilton Police (docket entry 27) is hereby denied.[8]

---

[8]  The attorney for these defendants made an appearance and filed a motion on December 1, 2008 (docket entry 29).

The motion for extension of time to file a response, filed by Plaintiff on November 24, 2008 (docket entry 30), is hereby dismissed as moot.

The cross-motion for leave to file an answer or responsive pleading filed by defendants Connor and the Trenton Police (docket entry 29) is dismissed as moot.

An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: December 24, 2008